OF

## THE STATE OF NEW JERSEY.

MAY TERM, 1884.

———— ▬ ————

THEODORE RUNYON, ESQ., ORDINARY.

———— ▬ ————

38  473
64  71
e64  72

REBECCA DAVIS, appellant,

*v.*

JAMES COMBS, respondent.

· The annual accounts of a guardian which have been audited and ordered to be recorded, are to be taken, on his final accounting, as *prima facie* correct, as well in respect to his disbursements as his receipts. Actual notice on citation to the ward is not necessary before filing such annual accounts. The surrogate's fees for auditing and stating them may be allowed.

Appeal from decree of Salem orphans court.

*Mr. M. H. Stratton,* for appellant.

473

Davis v. Combs.

*Mr. W. H. Potter*, for respondent.

THE ORDINARY.

Joel Dubois, father of the appellant, died in October, 1863, leaving a wife and but one child. His will was admitted to probate by the surrogate of Salem county, in November following. By the will, after appointing the respondent executor and testamentary guardian of his child or children, as the case might be, he directed that his debts and funeral expenses be paid, and' ordered his executor to pay out of his personal estate a mortgage on the house and lot of his sister, and then empowered him to sell his woodland, and put the net proceeds of the sale out at interest, his widow to receive one-third of the interest, and his child or children, as the case might be, the other two-thirds. He then gave to his wife $200 worth of his household goods and one of his cows. He next stated that he was about to buy a lot in Pittstown, and intended to build a house upon it with all the necessary appurtenances to make it a comfortable home, with a view to occupying it himself if he should live to see it finished, he directed that in case of his death before the house should have been completed, his executor should build and finish it, and he authorized him to pay all contracts that he, the testator, had made or might make before his death, out of any moneys that might come to his hands. He gave the house and lot to his wife for life as part of her dower. He also gave her one-third of his personal estate after payment of his debts and funeral expenses and the before-mentioned mortgage &c., and one third of the rents, issues and profits of his farm during her widow-

NOTE.—An annual account does not conclude the parties, *Prindle* v. *Holcomb*, 45 Conn. 111; *Diaper* v. *Anderson*. 37 Barb. 168; *Bourne* v. *Maybin*, 3 Woods 724; *Coffin* v. *Bramlitt*, 42 Miss. 194;·*Kidd* v. *Guibar*, 63 Mo. 342; *Douglass's Appeal*, 82 Pa. St. 169; and although after allowance by the court, it is regarded, on a final accounting, as *prima facie* correct, *Latham* v. *Myers*, 57 Iowa 519, 521; *Heath's Estate*, 53 Iowa 36; *West* v. *West*, 75 Mo. 204; *Spedden* v. *State*, 3 Harr. & Johns. 251; *State* v. *Baker*, 8 Md. 44; *Cardwell's Case*, 55 Cal. 137; *Cook* v. *Rainey*, 61 Ga. 452, it may, nevertheless, be rectified. *Starrett* v. *Jameson*, 29 Me. 504; *Willis* v. *Fox*, 25 Wis. 646; see *Ordinary* v, *Dean*, 15 Vr. 64; *Livingston* v. *Combs*, *Coxe* 42; *Woodmansie* v. *Woodmansie*, 32 Ohio St. 18.—REP.

Davis *v.* Combs.

hood, after payment of the necessary repairs and the expenses of keeping up the farm " in an improving condition." He then in effect gave to his daughter (although he provided for the possible event of the birth of another child or children, he had none) the residue of his personal estate until she should arrive at the age of eighteen years, together with the two-thirds of the proceeds of the sale of the before-mentioned woodland, also the two-thirds of the rents and profits of his farm, and directed her guardian to provide for her support, maintenance and education during her minority, giving him full power in the premises, and directing that the expenses be taken out of any money in his hands. He also directed that in case of the death or remarriage of his wife, the before-mentioned third part of his personal estate should go to his daughter, or his children, as the case might be, and declared that in case of her or their death before attaining to majority, or her or their death without lawful issue, his nephew, Joel Dubois, should have all his property. The testator's widow remarried in October, 1865, two years after his death. At the death of the testator his daughter was but a little over two years old. She became twenty-one July 20th, 1881. Letters of testamentary guardianship of her and her property were issued to the respondent December 30th, 1864. She was then about four and a half years old. He filed fourteen accounts of his guardianship, the first in December, 1865, and the last (a final account) in 1881. The first thirteen of those accounts were, and evidently were intended to be, of the character of the annual accounts which guardians are by statute required to file. *Rev. p. 773* §§ *96, 97.*

The final account was audited and stated by the surrogate and placed on file in his office twenty days previous to the May term, 1881, and it appearing to have been advertised according to law, and having been reported to the court at that term for settlement, and there appearing to be a balance due to the guardian from the ward, the account was, according to the directions of the statute, laid over to the next term. At that term, the ward (she had then attained her majority) applied for leave to file exceptions to the final account and the previous one, also, which was granted.

After the filing of the exceptions, they were referred to a master in chancery to examine and restate the account, after hearing the parties and their witnesses, and to report to the court. He did not report until May, 1883 ; his time for reporting having been extended. By his report it appeared that he had examined all the accounts, and considered all the exceptions and had allowed certain charges, amounting in the aggregate to $946.50, and he reported a balance of $2,642.94 due the guardian May 19th, 1881, which, with interest from that date to July 21st, 1883, $252.63, amounted at the latter date to $2,895.57. The court, after hearing the counsel of the parties in favor of and in opposition to the report, by its decree of July 21st, 1883, confirmed the report, and directed the surrogate to state an account in conformity therewith, and decreed that there was due from the ward to the guardian the balance, $2,895.57, which, on such statement of the account, would appear in favor of the latter. From that decree Mrs. Davis, the ward, appealed.

On the examination before the master, the exceptant, while she examined her mother and other witnesses, did not see fit, although she had the opportunity to do so, to examine the guardian. The latter relying on his annual accounts, which had been recorded, produced no witnesses in his own behalf. The master and the court held that those accounts were presumptive proof of the disbursements charged therein. The principal question between the parties is whether those accounts are to be considered as *prima facie* correct. The statute provides (*Rev. p. 773 § 97*) that every testamentary or other guardian shall exhibit to the orphans court once in each year, and oftener if required, an account of all moneys, goods and chattels he shall receive, and of the rents, issues and profits of any real estate in his possession belonging to his ward. By a subsequent section (the one hundred and seventh), it is provided that the annual accounts of every guardian which shall be exhibited to the orphans court as previously directed by the act, shall be examined by the court or by such person or persons as they shall appoint, and being found and certified or reported to be properly and fairly stated, and the articles thereof to be supported and justified by the vouchers, and

Davis v. Combs.

the report, in case of a reference, being approved and confirmed by the court, shall, with such confirmation, be entered of record; and if any articles of such accounts be at any time afterwards excepted to by the ward or his representative, it shall be incumbent on him to prove or show the falsity or injustice thereof, unless notice on his behalf shall have been given, at the time of passing the accounts, that such article would be excepted to, and a memorandum of that notice shall have been entered on record or a request made that it be entered. The appellant's counsel insists that the provisions of the law in regard to such accounts were not observed, and that the accounts are of no effect as against the appellant. There was no citation of the ward on the passing of any of the several accounts, but notice of settlement was given by advertisement in each case. The appellant's counsel urges that the law requires not only notice by advertisement, but notice by citation also (citing *Rev. p. 774* §§ *102, 103*), as a prerequisite to the passing of the annual as well as the final accounts of guardians, and he insists, also, that the action of the court in ordering the accounts in question to be recorded without such notice by citation was illegal and is a nullity. He also insists that by the statute (*Rev. pp. 773, 775* §§ *97, 107*), the annual accounts are not to include disbursements, and hence he claims that if the statute be so construed as to hold that no notice by citation of the passing of the annual accounts is required, the guardian is entitled to protection under those accounts only as to his receipts, and not as to his disbursements. The act above quoted, requiring accounts from guardians once in each year, and oftener if required, has been in existence since 1799. *Elm. Dig. p. 225* § *3.* Neither as originally enacted nor as revised and re-enacted, does it require or provide for any notice to any one. *R. S. 1846 p. 374* § *3; Rev. p. 775* § *107.* But from the beginning of the legislation on the subject of the accounts of guardians, there have been provisions for notice to the parties interested in the passage and settlement of the final accounts of guardians. It is urged that the annual accounts are within the terms of the enactments of 1820 and of the Revision, requiring notice by citation on the settlement of guardian's accounts, inas-

much as those acts speak of accounts generally. But it is mani-
fest that they refer wholly to final accounts, to accounts which
are to be settled. And in the last collection of acts on the sub-
ject of guardians' accounts—that contained in the Revision—a
distinction between the two sorts of accounts is evidently recog-
nized ; for the provision for the recording of annual accounts
follows those which are made for the settlement of final accounts,
and the former accounts are there designated as annual accounts,
to distinguish them from accounts to be passed upon and settled
finally. In *Burnham* v. *Dalling, 1 C. E. Gr. 144 (1863)*,
Chancellor Green said, referring to the provision under considera-
tion, that in proceedings under it, no notice by advertisement or
citation of the ward was required. Nor can this fairly be re-
garded as merely a *dictum* of the chancellor. The question before
him was, whether a settlement of a guardian's account could be
regarded as *prima facie* evidence of the truth of the charges con-
tained therein, so as to render it incumbent upon the ward to
prove or show the falsity or injustice thereof—the same question
which is now under consideration. There was no notice of any
kind in that case. He held that the settlement could not be
supported as a final one, for there was no notice nor any pro-
ceeding under the provision for the recording of annual accounts
to the passing of which he, as before stated, declared notice was
not requisite.

It is urged that it is necessary to a just and equitable construc-
tion of the act, to hold that the ward is entitled to notice, by
citation, of a proceeding which is to affect his or her property ;
that such a construction is but a dictate of natural justice. But
the proceeding in question is one instituted for the protection of
wards. It is a provision that every guardian shall, once in each
year, and oftener if required, exhibit on oath, to the court, the
condition of the ward's estate in his hands, to the end that the
court may examine and scrutinize it, and see and examine the
vouchers for his alleged disbursements, so that it may be known
by a judicial examination and adjudication whether his dealings
with the estate have apparently been just and proper. A like
provision has existed for a long time in the court of chancery in

regard to guardians and receivers appointed by that court. *Rules 187, 188, 189.* The proceeding there requires no notice. It is to be remembered that in the proceeding in the orphans court, the annual accounts are not settled; they are merely ordered to be recorded, if, on examination, they prove satisfactory in the particulars and to the extent stated in the statute. They are still open to attack after they have been recorded. And in the case in hand the ward might have examined the guardian as to every item of the accounts, from the beginning to the end, had she seen fit, and she might have examined his vouchers with a view to showing errors in the accounts, and had she been successful in showing error, she would have had the benefit of it. She did show errors to her prejudice to the amount of $946.50, and they were corrected. The effect of the order to record the accounts is merely to shift the burden of proof as to any items not objected to and which appear to the court to be correct. The act provides that mere notice in behalf of the ward, at the time of passing the accounts, that an item will be excepted to, will, if a memorandum of the notice be entered on the record, prevent the shifting of the burden of proof as to that item and leave it upon the guardian up to the time of passing his final account. The provision was designed for the protection of the guardian too, as well as for that of the ward, to give him the advantage of submitting his account of his expenditures to a judicial examination soon after making the disbursements, and to give him the benefit of an approval thereof to the extent of establishing its correctness *prima facie,* so far as it should appear correct and not be disputed. The accounts are to be filed at stated periods, at least once in each year. If presented annually, those interested may reasonably be required to take notice of the presentation of them without notification by citation. If the guardian should fail to present his annual account, any person interested in the estate or any other person as next friend of the ward, may cite him to present it. *Rev. p. 773 § 98.* In such case, such person would need no notice by citation. And so, too, if the guardian were required to present such account oftener than once a year. The construction put upon the act by

Chancellor Green in *Burnham* v. *Dalling*, over twenty years ago, was in accordance with the practice as it then existed, and the same practice has continued ever since. The first three of the annual accounts in this case were passed by a court presided over by Judge Lucius Q. C. Elmer, and the certificate of the action of the court thereupon endorsed on the account is signed by him. A justice of the supreme court presided in the court when the rest were presented and ordered to be recorded. That there was no notice by citation must have been known, and the fact that all of the thirteen accounts were ordered to be recorded without any proof of such notice, must be regarded as evidence that, in the opinion of the court, the statute did not require such notice. All the accounts appear to have been audited and stated by the surrogate. Those of 1865, 1867, 1869, 1870, 1871 and 1872 are not certified to have been so, but they each contain a charge for such work. The other accounts, those of 1873, 1874, 1875, 1876, 1878 and 1880, contain a like charge, and on each of them is endorsed a certificate by the surrogate that the account has been audited and stated by him and found to be correct, and that having been duly advertised it is reported by him to the court for allowance. The appellant's counsel argues that, inasmuch as the accounts appear to have been audited and stated, they may properly be held not to have been presented as annual accounts to be examined and passed upon and recorded merely, but as accounts for settlement. But it is evident, from the certificates endorsed upon the accounts, that they were presented as annual accounts, and passed upon by the court as such. None of them was settled, and nothing more was done with any of them than to order it to be recorded. On each is a certificate by the court, signed by the presiding judge, that the guardian having presented an account of the produce of the estate of the ward, with the disbursements thereout, and the court having examined it, and it appearing to be properly and fairly stated and the articles thereof supported by the vouchers, it is ordered to be entered of record. It was proper to cause such accounts to be audited and stated before they were presented to the court. The

Davis v. Combs.

accounts were duly passed and ordered to be recorded under the one hundred and seventh section of the orphans court act.

The appellant's counsel insists, as before stated, that the provisions of that section do not extend to an account of the disbursements of the guardian, but cover only his account of moneys, goods and chattels received for the ward, and rents, issues and profits of the ward's real estate in his possession. The section as it stood up to the Revision, included disbursements in terms, and therefore there can be no ground for denying that the accounts prior to 1875 properly included disbursements. In the Revision the word "disbursements" is indeed omitted from the section, but from the language it is evident that no change was intended. The provision for examination of the vouchers is evidence of this; for, according to the ordinary signification of the term in such a connection, vouchers are the evidences of payments made, not of moneys or other property received.

The charges in the accounts are definite and plain; and it is to be assumed, under the provisions of the section just considered, that, in the absence of proof to the contrary, the moneys were paid as and for the purposes stated. There has been no concealment on the part of the guardian. The frequency and particularity with which he accounted is some evidence, at least, of good faith on his part in the management of the estate. There is, in fact, nothing to cast any suspicion upon his management, unless it be the fact of the disallowance of some items of his account for money paid to the ward's mother. But taking into consideration the circumstances, and especially the length of time (from four to fifteen years) which had elapsed between the time of the alleged payments and the time when the ward's mother, who is the only witness on the subject, testified, it is by no means improbable that the denial of the receipt of the moneys in question was due to want of recollection. The guardian appears to have had vouchers for the alleged payments, and there is nothing but the denial to indicate any fraudulent intention on his part.

In the petition of appeal, objection is made particularly to the charges for board and clothing of the ward, and the charges for auditing and stating the accounts. The guardian paid the money

31

for the board and clothing and for the auditing and stating.  As to the money paid for auditing and stating the accounts, it is not alleged that the amount paid for the service was excessive, but that the service itself was not a necessary one if the accounts were merely annual accounts.  I have already said that in my opinion the services were proper, although the accounts were annual accounts and not passed for settlement.  The only question as to the charges for board and clothing is, whether they are so large as to justify the disallowance of them for that reason alone.  The ward had the benefit of the board and clothing. I cannot say that the charges are so large as to amount to a waste of the estate, or as even to be improper, in view of the amount of the estate.  The average sum paid for board was not more than about $106 a year, and the average sum paid for clothing not more than about $85 a year, in which is included the cost of the ward's wedding outfit.  The will directed the guardian to provide for the support and education of the ward, gave him full power in the premises, and directed that the expenses be taken out of any money in his hands.  It also directed him to keep the farm in an "improving condition."  He appears to have discharged his duty with fidelity.  The ward's revenue was not sufficient to maintain and educate her.  He did not apply to sell any of her property.  He seems to have been willing to make advances for her benefit out of his own funds for her support and education until she should have attained to her majority, and then look to her property for re-imbursement if the court should approve his conduct in the trust.  She received but $6.17 from her father's personal estate, and she appears to have had no other income except what was derived from the farm.  That was not enough for her support, maintenance and education.  Consequently there is a balance due him from her.

The decree appealed from should be affirmed, with costs.